UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HEALTHKEEPERS, INC.,

Plaintiff,

v.

RICHMOND AMBULANCE AUTHORITY,

Defendant.

Action No. 3:09-CV-160

## <u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on Defendant's Motion to Alter or Amend Judgment. (Doc. No. 46.) Defendant moves this Court to alter or amend its July 7, 2011 Order entering summary judgment in Plaintiff's favor. For the reasons stated below, the Court DENIES the Motion.

### I.   BACKGROUND

As detailed in the opinions previously filed in this case, this dispute concerns what rate Plaintiff HealthKeepers, Inc. ("HealthKeepers") as a Medicaid managed care provider, must pay Defendant Richmond Ambulance Authority ("the Authority" or "RAA"), when the Authority provides emergency transportation services to HealthKeepers' Medicaid enrollees.

Absent a contract to guide the parties' relations, a dispute arose between them as to what rate HealthKeepers would have to pay for the emergency transportation services the Authority provided to HealthKeepers' Medicaid members.  HealthKeepers asserted it should have to pay the rates established by the Virginia agency responsible for

implementing the medical assistance program popularly known as "Medicaid"—the

Department of Medical Assistance ("DMAS"); the Authority claimed it could charge its own

rates.  In a 2001 ruling, the Circuit Court of the City of Richmond sided with the Authority.

Since that decision, then, HealthKeepers has been paying the Authority's rates for services

rendered by the Authority to HealthKeepers' Medicaid-eligible enrollees.

Congress's passage of the Deficit Reduction Act of 2005 gave rise to this dispute.

That Act amended the Social Security Act by appending a new subsection (b)(2)(D) (the

"Medicaid Amendment"), effective January 1, 2007, to 42 U.S.C. § 1396u-2(b)(2). The

Medicaid Amendment provides:

> Any provider of emergency services that does not have in effect a contract
> with a Medicaid managed care entity that establishes payment amounts for
> services furnished to a beneficiary enrolled in the entity's Medicaid managed
> care plan must accept as payment in full no more than the amounts (less any
> payments for indirect costs of medical education and direct costs of graduate
> medical education) that it could collect if the beneficiary received medical
> assistance under this subchapter other than through enrollment in such an
> entity.  In a State where rates paid to hospitals under the State plan are
> negotiated by contract and not publicly released, the payment amount
> applicable under this subparagraph shall be the average contract rate that
> would apply under the State plan for general acute care hospitals or the
> average contract rate that would apply under such plan for tertiary hospitals.

42 U.S.C. § 1396u-2(b)(2)(D).

This litigation ensued in the wake of the parties' inability to agree on the effect of

the Medicaid Amendment on the rates the Authority could charge. HealthKeepers sought

summary judgment on a declaratory judgment action that requested this Court to

recognize that the Medicaid Amendment applies to emergency ambulance services

provided by the Authority to HealthKeepers' Medicaid managed care enrollees, and,

therefore, that the Authority could not charge more than the amounts set by DMAS.  For its

part, the Authority sought summary judgment on HealthKeepers' claim, arguing that it is

2

not covered by the Medicaid Amendment, and therefore could continue charging its own rates. Who prevailed turned on whether ambulance services are embraced within the definition of "emergency services" articulated in 42 U.S.C. § 1396u-2.

This Court granted summary judgment in favor of the Authority. *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, No. 3:09-CV-160, 2010 WL 1375402, at *10 (E.D. Va. Apr. 6, 2010). The Court found that the term "emergency services" in 42 U.S.C. § 1396u-2(b)(2)(D) should be defined using the definition for that same term in § 1396u-2(b)(2)(B), the neighboring subsection already in place before enactment of the Medicaid Amendment. The Court went on to hold that the Authority did not provide "emergency services" as contemplated by the statute, and therefore was entitled to judgment as a matter of law.

The United States Court of Appeals for the Fourth Circuit reversed. 642 F.3d 466, 474 (4th Cir. 2011). The court of appeals agreed that the term "emergency services" should be defined with reference to § 1396u-2(b)(2)(B), but reached a contrary conclusion with respect to the second statutory interpretation question—whether the Authority provided "emergency services" as contemplated by § 1396u-2. Under subsection (b)(2)(B),

> the term "emergency services" means, with respect to an individual enrolled with an organization, covered inpatient and outpatient services that—
> (i) are furnished by a provider that is qualified to furnish such services under this subchapter, and
> (ii) are needed to evaluate or stabilize an emergency medical condition (as defined in subparagraph (C)).

42 U.S.C. § 1396u-2(b)(2)(B). The outcome of this second question turned on whether ambulance services are encompassed in the phrase "covered inpatient and outpatient services." *Healthkeepers*, 642 F.3d at 473. The Fourth Circuit held that they were. It concluded:

3

> [T]he plain meaning of the word outpatient and the structure of the statute support a finding in favor of Healthkeepers. The district court thus erred in granting summary judgment to the Authority and failing to grant summary judgment to Healthkeepers. Accordingly, we reverse the judgment of the district court and remand for entry of summary judgment in favor of Healthkeepers.

*Id.* at 474.

The Fourth Circuit issued its mandate on July 6, 2011. (Doc. No. 44.) Consequently, and in response to Healthkeepers' Motion for Entry of Judgment (Doc. No. 42), this Court granted summary judgment in favor of Healthkeepers by an Order entered July 7, 2011. (Doc. No. 45.) The Authority then filed the instant Motion, invoking Rule 59(e) of the Federal Rules of Civil Procedure, and asking the Court to alter or amend the Court's Order entering summary judgment for Healthkeepers.

## II. DISCUSSION

### A. Legal Standard

Rule 59(e) of the Federal Rules of Civil Procedure governs motions to alter or amend a judgment. The Rule simply provides, "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). It is well-settled, however, that there are only three grounds for granting a motion to alter or amend a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).

Reconsideration is "'an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 124 (2d ed. 1995)). The motions "may not be used . . . to raise arguments which could have been raised prior to the issuance of the

4

judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.*

The Authority rests its argument under the third ground for altering or amending a judgment, "to correct a clear error of law or prevent manifest injustice." *Hutchinson*, 994 F.2d at 1081.[1] As the Authority is the moving party, the burden is on the Authority to show an alteration or amendment to the judgment is necessary to correct a clear error of law or to prevent a manifest injustice. *E.g., Owen-Williams v. BB & T Inv. Servs., Inc.*, No. 06–00948(CKK), __ F. Supp. 2d __, 2011 WL 2783783 at *4 (D.D.C. July 18, 2011).

## B. Analysis

HealthKeepers' Complaint asked this Court to

> [d]eclare that, effective January 1, 2007, Section 6085 of the Social Security Act limits RAA's reimbursement to the rates established by DMAS when RAA provides emergency transportation services to Anthem HealthKeepers Plus Members who are eligible for Medicaid[.]

(Complaint 7, Mar. 20, 2009 (Doc. No. 1.).)

The Authority objects to this Court's granting of HealthKeepers' Motion for Entry of Judgment and entering summary judgment in HealthKeepers' favor. Stating that it did not have an adequate opportunity to be heard on the Motion for Judgment, the Authority proposes that the Court alter or amend its July 7, 2011 Order, offering the following three-paragraph declaration for entry in its stead:

> Pursuant to 42 U.S.C. § 1396u-2(b)(2)(D), when the Richmond Ambulance Authority furnishes "emergency services," as defined in 42 U.S.C. § 1396u-2(b)(2)(B), to a beneficiary enrolled in HealthKeepers, Inc.'s Medicaid managed care plan, the Richmond Ambulance Authority must accept as payment in full no more than the amounts that the Richmond Ambulance Authority could collect if the beneficiary received medical assistance under

---

[1] (*See* Def. Br. 9, Aug. 4, 2011 (Doc. No. 47.) ("In the present case, the third ground applies, for several reasons.").)

Subchapter XIX of Chapter 7 (Social Security) other than through enrollment in HealthKeepers, Inc.'s Medicaid managed care plan.

This declaration applies only as long as the Richmond Ambulance Authority does not have in effect a written contract with HealthKeepers, Inc. that establishes payment amounts for "emergency services" furnished to a beneficiary enrolled in HealthKeepers, Inc.'s Medicaid managed care plan.

As HealthKeepers, Inc. did not seek any monetary relief in this action, this Order has no application to, or effect upon, whether HealthKeepers, Inc. can recover any payments that it has made to the Richmond Ambulance Authority since January 1, 2007, or the Richmond Ambulance Authority's defenses to any such claim.

(Def. Br. 15–16, Aug. 4, 2011 (Doc. No. 47.).)

In support of its argument that the Court should alter or amend its judgment to correct a clear error of law or prevent manifest injustice, the Authority offers two primary arguments. First, the Court's entry of summary judgment in the July 7, 2011 Order would be tantamount to entering a declaration inconsistent with the both the Medicaid Statute and the Fourth Circuit's interpretation of it. Second, entering summary judgment in favor of Healthkeepers arguably provides for a declaration that is impermissibly retroactive. Broadly, the Authority's position is that the above three-paragraph declaration is necessary to clarify the situation between the parties and guide their future behavior.

With respect to its argument that the Court's entry of summary judgment in favor of Healthkeepers would be inconsistent with the Medicaid statute and the Fourth Circuit's interpretation of it, the Authority argues that "[t]he Fourth Circuit specifically concluded that 'the term outpatient emergency services [in § 1396u-2(b)(2)(B)] encompasses patients being treated outside of the hospital *as long as the medical provider and type of service fall within the definition of emergency services.*'" Def. Br. 11, Aug. 14, 2011 (quoting *Healthkeepers*, 642 F.3d at 474). This language, according to the Authority, means that the

6

definition of "emergency services" plays a critical role in determining whether § (b)(2)(D) applies. The Authority states that to the extent it provides services that do not constitute "emergency services" under § (b)(2)(B), the Richmond Circuit Court's earlier declaration should continue to control.

As to its second argument, the Authority states that because this Court's Order did not provide details regarding the declaration,[2] HealthKeepers could argue the Court embraces the language in the Complaint, which amounts to an impermissible retroactive declaration. This type of declaration would be inappropriate, because declaratory judgments are an inappropriate remedy for past conduct. Accordingly, the Court should clarify that the July 7 Order granting summary judgment in favor of Healthkeepers does not address the issue of whether Healthkeepers can recover a monetary award for past payments or the viability of any of the Authority's defenses to such a claim.

HealthKeepers contends the three paragraphs suggested by the Authority are procedurally out of order. The first two are superfluous, as the Fourth Circuit fully explained its ruling and does not need this Court to paraphrase it. In essence, the Authority is asking the Court to overrule the Fourth Circuit and violate its mandate. The third paragraph, moreover, is an advisory opinion that this Court cannot issue. In sum, HealthKeepers argues: (1) nothing in Rule 59(e) or the case law interpreting it allows a district court to disobey an appellate court; (2) the Court's Order contains no error of law and presents no injustice; and (3) even if Rule 59(e) applied, it does not allow the Court to render an advisory opinion.

---

[2] The Authority lodges the general complaint that neither this Court nor the Fourth Circuit addressed the specific wording of the declaration HealthKeepers sought in its Complaint. (Def. Reply Br. 1, Aug. 18, 2011 (Doc. No. 49.).)

HealthKeepers also contends the Authority's position that it did not have an opportunity to be heard on the Motion for Entry of Judgment is unfounded, as nothing in the Rules required HealthKeepers to file a motion for entry of judgment. HealthKeepers says it filed the motion only to move the process along. In short, HealthKeepers believes the Authority has no grounds to complain that this Court disobeyed the Fourth Circuit.

When arguing that an alteration or amendment is necessary to correct a clear error of law, "litigants are forewarned that . . . [they] should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Stewart Park & Reserve Coal. Inc. v. Slater*, 374 F. Supp. 2d 243, 254 (N.D.N.Y. 2005) (citation omitted). Here, the Authority does little more than disagree with the wording of the declaration provided in HealthKeepers' Complaint. The Authority has several reasons why it believes the declaration wording should be changed. It does not, however, show that this Court made a clear error of law by entering summary judgment in accordance with the Fourth Circuit mandate.

The Authority has also not demonstrated how the Court's failure to amend the order would result in manifest injustice. The only purported injustice is that HealthKeepers might be able to rely on this Court's decision if it files a lawsuit against the Authority to recover overpayments for the Authority's services since January 1, 2007. At this point, any litigation regarding past overpayments is purely speculative. Thus, it is hard to see how this Court's entering an order of summary judgment in a declaratory judgment action might result in manifest injustice to the Authority if not corrected.  To the extent the Authority believes manifest injustice would result from its not being heard on the issue before the Court entered the July 7, 2011, Order, any potential injustice has been erased, as the Authority set

8

forth its objections in the instant Motion and the Court has considered them in determining whether it will alter or amend the Order.

Moreover, the Authority's argument concerning the Fourth Circuit's statement that "the term outpatient emergency services [in § 1396u-2(b)(2)(B)] encompasses patients being treated outside of the hospital as long as the medical provider and type of service fall within the definition of emergency services," *Healthkeepers*, 642 F.3d at 474, is unpersuasive. Under the Authority's logic, this statement by the Fourth Circuit means that the definition of "emergency services" plays a critical role in determining whether § (b)(2)(D) applies, and the Court should clarify that its declaration only applies to emergency services under § (b)(2)(B).

The definition of "emergency services," of course, *does* play a critical role in determining whether § (b)(2)(D) applies. But the Authority's insistence on this Court's clarification that its declaration only apply to emergency services under § (b)(2)(B) is perplexing, for as previously chronicled, the Fourth Circuit held that the term "emergency services" in § (b)(2)(D) is defined with reference to § (b)(2)(B). Furthermore, in the passage immediately following the statement quoted by the Authority, the Fourth Circuit made abundantly clear its position as to whether the "emergency services" provided by the Authority fall within the compass of § (b)(2)(B)—and thus within the reach of § (b)(2)(D):

> Next, since we find that the term emergency services must have meant more than services which were rendered at the hospital, we are hard pressed to imagine what might be included in outpatient emergency services if not ambulance services. The services provided by the Authority go to the very heart of the language highlighted in a subsection of the definition. As the Authority conceded at oral argument, the Authority provides services necessary to "evaluate or stabilize an emergency medical condition." § 1396u–2(b)(2)(B). Therefore, we find that outpatient services must encompass ambulance services.

9

*Id.*

The Fourth Circuit's opinion in this case is clear. Contrary to the Authority's contentions, it provides guidance with respect to the parties' future behavior. There is no need at this juncture for the Court to expand, explain, or embellish upon the Fourth Circuit's ruling. It had a thorough analysis of the only issue presented by the declaratory judgment action brought by Healthkeepers: does the Medicaid Amendment "limit[ ] RAA's reimbursement to the rates established by DMAS when RAA provides emergency transportation services to Anthem HealthKeepers Plus Members who are eligible for Medicaid"? This Court said, "No"; the Fourth Circuit said, "Yes." Having answered the issue, there was nothing left for the Fourth Circuit to do but reverse the grant of summary judgment in favor of the Authority and instruct this Court to enter summary judgment in favor of Healthkeepers. As it was duty-bound to do, this Court entered summary judgment in favor of Healthkeepers. The Authority has not shown why Rule 59 should be applied to amend or alter this judgment, and its Motion therefore must fail.

## III.  CONCLUSION

Because the Authority has not shown a clear error of law or manifest injustice, the Motion to Amend or Alter Judgment is hereby DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __14th__ day of October 2011

10